**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| ANTHONY GRAVES,  )  | |
|      ID # 1429082,  )  | |
|           Petitioner,  )  | |
| vs.  )  | No. 3:12-CV-5259-M (BH) |
|  )  | |
| WILLIAM STEPHENS, Director,  )  | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal  )  | |
| Justice, Correctional Institutions Division,  )  | |
|           Respondent.  )  | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**I. BACKGROUND**

Anthony Graves (Petitioner) challenges his conviction for aggravated assault in Cause F05-72876-L. The respondent is William Stephens, Director of TDCJ-CID (Respondent).

**A. Factual and Procedural History**

On September 12, 2005, the State indicted Petitioner for the aggravated assault of Debbie Brown on or about July 11, 2005. (Clerk's Record ("C.R."):2-3). He pleaded not guilty and was tried before the court in the Criminal District Court No. 5 of Dallas County on March 13, 2007. The state appellate court recounted the evidence at trial as follows:

> Debbie Brown and appellant shared an apartment with Brown's two daughters, son, and three grandchildren. On the night of July 11, 2005, Brown and appellant got into an argument about Brown's neighbor and ex-boyfriend, Robert Eldridge. According to Brown's testimony, the argument quickly escalated with appellant suggesting she was talking to Eldridge behind his back. When she tried to ignore him, appellant started tapping her like "a child...trying to get your attention." He also tried to touch her "in a sexual way."

Brown told appellant she "wasn't in the mood to do anything, and to leave [her] alone." Appellant accused her of refusing his advances because she was "involved with" Eldridge.

Weary of arguing about Eldridge, Brown asked appellant to leave and started to retrieve his belongings from a walk-in closet. Appellant shouted that he could remove his belongings himself, but he just stood by the closet and continued to talk. Believing appellant had no intention of leaving, Brown picked up a nearby hammer and pounded on a set of plastic drawers, yelling at appellant to leave. After she pounded on the drawers a second time, appellant grabbed Brown's shoulders, causing the two of them to fall onto the bed. Brown dropped the hammer during the fall. The two of them struggled on the bed, with appellant sitting on top of Brown in a straddling position. Appellant tried to put his hands around Brown's throat as she attempted to fight him off by hitting him.

During the struggle, Brown fell to the floor and landed on her knees. Appellant then approached her from behind and placed her in a headlock, twisting her neck. Brown bit appellant's hand in an attempt to free herself. After struggling with appellant, Brown eventually ended up seated on the floor between the bed and the dresser. Appellant placed his hands around Brown's throat and began to choke her, saying "I'll kill you. I'll kill you." Brown told appellant to let her go but had difficulty speaking. She tried to pry appellant's fingers from her throat. As she struggled with appellant, Brown heard her granddaughter saying, "Please don't hurt my granny. Don't hurt my granny." Brown next remembered her daughter Courtnie slapping on her face and saying, "Please, mama. Please, mama." She did not know when Courtnie entered the room.

Courtnie, who lived in her mother's apartment and was four to five months pregnant at the time of the alleged assault, corroborated much of Brown's testimony. Courtnie was in the nearby living room when she heard the argument between appellant and her mother. Wondering what was happening, she looked into the bedroom and saw appellant on top of Brown. Appellant's hands were around Brown's neck and he was trying to choke her. Courtnie tried "to get him off of her" by pulling on appellant's shoulders but she could not move him out of the way. Realizing she could not move appellant, Courtnie went to the living room and grabbed the telephone. To make sure appellant would not know she was calling the police, Courtnie went outside the front door of the apartment to use the telephone

2

As she was "coming in the front door," Courtnie saw appellant leaving the bedroom. She went into the bedroom and saw Brown's mouth was bleeding and that she was having difficulty breathing. She was shaking and gasping for air. Courtnie asked appellant what he had done to her but appellant did not respond. He just kept saying, "I'm not going to let you hurt me." After appellant left the apartment, Courtnie grabbed her mother by the arm and led her to the couch. She was in and out of consciousness and her eyes "kept rolling back in her head." In an effort to help her regain consciousness, Courtnie lightly tapped Brown on the face and shook her. She kept asking her if she was okay, but she did not respond. Fearing for her mother's life, Courtnie went outside to look for the police. When she returned to the apartment, the police were already there.

The State's final witness, Volanda Harris, testified that fifteen or sixteen years before trial she and appellant had been in a "roller coaster" relationship. During their six to seven year relationship, appellant engaged in repeated acts of destructive and violent behavior in order to get her attention. She testified, for example, that appellant had once set her car and her parents' car on fire. He also threatened her with a knife. On another occasion, appellant hit her in the forehead with a brick that he tossed through her kitchen window. Harris also described an incident where appellant followed her onto a bus and started firing a gun inside the bus.[1]

Testifying in his own defense, appellant provided a very different version of events. He claimed that as he and Brown were talking about Eldridge she stood up from the bed, hit him in the eye with a closed fist, and kicked him off the bed. Appellant claimed Courtnie was in the bedroom with them and told Brown to stop and then left the bedroom shortly thereafter. Enraged, Brown told appellant to leave and began retrieving his belongings from the closet. When appellant told her, "No, I'll get it myself," Brown stepped aside and allowed him to enter the closet and remove his clothing. As appellant removed his clothing from the hangers, Brown entered the closet and said, "I told you to get out." She spun him around and kicked him in the genitals, causing appellant to fall to his knees in "excruciating pain." Appellant asked her what was wrong and why she was doing this. She replied, "I want you to get out

---

[1] While Mr. Harris testified during the State's case-in-chief, she was actually testifying as a punishment witness who testified out of order with defense counsel's acquiescence. (R. 1:84-5, 96).

3

>   now." Appellant then stood up to retrieve his clothes from the closet.
>
>   According to appellant, Brown left the bedroom but returned a few moments later carrying a metal hammer in her right hand. She spun him around and hit him in the chest with the hammer. Trying to get away, appellant backed into the closet. Brown swung the hammer at him two more times but missed. Swinging it a third time, she hit appellant in the back of his shoulder. Appellant responded by grabbing Brown's right hand and pushing "her out by the neck" and forcing "her out of the closet" onto the bed. Appellant claimed Brown never dropped the hammer.
>
>   Appellant claimed Brown fell onto the bed, scratching and biting him. She bit his hand and also bit her lip, causing it to bleed. Appellant claimed he tried to grab the hammer with one hand while using his other hand to push her face down on the bed. As he did this, Brown bit his wrist. Appellant showed the court what he claimed were scars from the bite marks, and appellant's mother testified that she noticed the injuries when she saw appellant a day or two after the incident. Appellant insisted he never hit Brown or tried to choke her with his hands.

*Graves v. State*, 2008 WL 444480, No. 05-07-00353-CR, slip op. at *1-3 (Tex. App.–Dallas, Feb. 20, 2008, pet. ref'd). The trial court found Petitioner guilty, and after a sentencing hearing, sentenced him to thirty-three years of imprisonment. (C.R.:9; R. 1:142-43, 184-85).

On direct appeal, Petitioner alleged that the evidence was factually and legally insufficient to support his conviction, that his sentence was void because it was improperly enhanced outside of the applicable punishment range, and that the judgment incorrectly stated that he pled guilty. *Graves*, slip op. at *3-5. Petitioner's conviction was affirmed on direct appeal after the state court modified the judgment to reflect that there was no guilty plea. *Id*. at 6. Petitioner's petition for discretionary review (PDR) was refused. on August 20, 2008. *See* PD-0321-08. He did not file a petition for writ of certiorari with the Supreme Court. Petitioner mailed his state habeas application on August 14, 2009, raising the same claims he raises in his federal petition. (State Habeas

4

Transcript "S.H.Tr." at 7-14, 16). On October 10, 2012, the Court of Criminal Appeals denied the state writ without a written order on the findings of the trial court. *Id.* at cover.

Petitioner mailed his petition for federal habeas relief on December 20, 2012. (Pet. at 10.) Respondent filed a response on May 7, 2013, and provided the state court records. Petitioner filed his reply on June 24, 2013.

**B.    Substantive Claims**

Petitioner raises the following claims for relief:

–the indictment is void (ground seven);

–his sentence is illegal and void because it is outside the applicable sentencing range and improperly enhanced (grounds one and six);

–the evidence is insufficient to support his conviction because no evidence of serious bodily injury was presented and because the evidence indicated he acted in self-defense (grounds four and five);

–the State presented perjured testimony at his trial (ground eight).

–his trial counsel was ineffective when counsel failed to: (1) investigate the facts of the case; (2) present an adequate defense; (3) present expert testimony; (4) preserve error for appeal; and (5) properly object to extraneous offense testimony (ground two); and

–his appellate counsel was ineffective for failing to argue the grounds raised in the federal petition on appeal (ground three).

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

5

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively

6

unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. INDICTMENT

Petitioner asserts that the indictment is defective and therefore void because it alleged both the lesser offense of assault and the greater offense of aggravated assault. (Pet. at 20-21).

"The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985). The indictment alleged that on or about July 11, 2005, in Dallas County, Texas, Petitioner intentionally, knowingly, and recklessly caused bodily injury to Debbie Brown by choking her, and that he intentionally, knowingly, and recklessly caused serious bodily injury to Debbie Brown by choking her. The indictment also alleged that Petitioner's hand was a deadly weapon. (C.R.:2). In denying this claim, the state habeas court found that the indictment properly alleged two alternate means of committing aggravated assault. (S.H.Tr.:91-92). Petitioner has failed to demonstrate that the convicting court had no jurisdiction over his case based on this indictment. Therefore, his claim that the indictment is defective and therefore void is without merit, the state court's conclusion is not contrary to federal law, and this ground for relief should

7

be denied.

## IV. ENHANCED SENTENCE

In his first and sixth grounds for relief, Petitioner asserts that his sentence is illegal and void because it is outside the applicable sentencing range and improperly enhanced. He claims that there is no evidence that he pled true to the second enhancement paragraph after the first enhancement paragraph was withdrawn by the prosecutor, and that the trial judge never made a specific finding that the second enhancement paragraph had been proven by the prosecution and therefore was "true." Because he did not plead true, the evidence presented at punishment was allegedly insufficient to support a finding that he had previously been convicted of arson because the custodian of records could not testify that he was the person who had been convicted of arson. (Pet. at 13, 19).

**A.     Procedural Bar**

On direct appeal, the state appellate court held that Petitioner had failed to preserve error with respect to these claims because there was no objection to his sentence at trial. *Graves*, slip op. at *4-5. Petitioner's PDR was then refused by the Court of Criminal Appeals. In general, federal courts may not review a state court decision that rests on an adequate and independent state procedural default unless the habeas petitioner can establish either "cause" for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989). To satisfy the independent and adequate requirements, the dismissal of a claim must "clearly and expressly" indicate that it rests on state grounds that bar relief, *and* the bar must be strictly and regularly followed by state courts and applied to the majority of similar claims. *Finley v. Johnson*,

8

243 F.3d 215, 218 (5th Cir. 2001), *citing Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995).

The Fifth Circuit has held that the Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a claim. *Jackson v. Johnson*, 194 F.3d 641, 652 (5th Cir. 1999). The Court of Criminal Appeals has also ruled that an objection at trial is needed to preserve even constitutional errors for appellate review. *See Allridge v. State*, 850 S.W.2d 471 (1991). Accordingly, Petitioner's first and sixth grounds for relief are procedurally barred because they were denied by the state court pursuant to an independent and adequate state procedural rule, and he has failed to either allege or show cause and prejudice for this default or a fundamental miscarriage of justice.

**B.    Merits**

These claims are also without merit. On direct appeal, the state appellate court held in the alternative that these claims are without merit because Texas state law does not require that a defendant enter a plea to the enhancement paragraph when the punishment hearing is before the court rather than a jury, and Texas law does not require the trial court to orally announce its finding with regard to an enhancement paragraph. *Graves*, slip op. at *5. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

Furthermore, Petitioner testified during the punishment phase of the trial that he pled guilty to arson, that he received probation, that his probation was revoked, that he was sent to prison, and

that he was paroled on August 8, 1986. (R. 1:162-64). This testimony was sufficient to support a true finding with respect to this enhancement paragraph. The state habeas court's denial of these claims is not contrary to federal law. Petitioner's first and sixth grounds for relief should be denied.

## V. SUFFICIENCY OF EVIDENCE

In his fourth and fifth grounds for relief, Petitioner asserts that the evidence is insufficient to support his conviction because there was no evidence of serious bodily injury to the victim and because the evidence indicated he acted in self-defense.

Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979). There, the United States Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320. The trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id.*

Further, under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[] the weight or credibility given the evidence." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999). The *Jackson* standard applies whether the evidence is direct or

10

circumstantial. *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998).

In this case, the state appellate court ruled on direct appeal that the evidence was legally sufficient to support Petitioner's conviction despite his claim of self-defense. It first noted that Petitioner was charged with committing aggravated assault by choking Brown with his hand, a deadly weapon. It also noted that under Texas law, a person is guilty of assault if he: 1) intentionally, knowingly, or recklessly causes bodily injury to another; 2) intentionally or knowingly threatens another with imminent bodily injury; or 3) intentionally or knowingly causes physical contact with another when he knows or should reasonable believe the other will regard as offensive or provocative. An assault rises to the level of an aggravated assault when a defendant either causes serious bodily injury or uses or exhibits a deadly weapon during the commission of the assault. *Graves*, slip op. at *3, *citing* TEX. PEN. CODE ANN. §§ 22.01(a), 22.02(a) (West 2006). The state court noted the forensic pathologist's testimony that strangulation can cause serious bodily injury or death and that hands can be considered deadly weapons. It then determined that the trial court, as the fact finder and the sole judge of the credibility of the witnesses and the weight to give testimony, was entitled to believe the testimony of the victim Debbie Brown and her daughter and to disbelieve Petitioner's self-defense testimony. Viewing the evidence in the light most favorable to the verdict, any rational fact finder could have found the elements of aggravated assault beyond a reasonable doubt. *Graves*, slip op. at *3-4.

The state court's analysis is not an unreasonable application of the *Jackson* standard. While Petitioner asserts that there was insufficient evidence of serious bodily injury to the victim, under Texas law a person is guilty of committing an aggravated assault where he causes bodily injury and uses or exhibits a deadly weapon. There was evidence that he caused bodily injury to the victim

11

through the use of his hand, and that a hand is a deadly weapon. Viewed in the light most favorable to the guilty verdict, there was sufficient evidence to support the elements of aggravated assault. Petitioner's fourth and fifth grounds for relief are without merit and should be denied.

## VI. PROSECUTORIAL MISCONDUCT

In his eighth ground for relief, Petitioner asserts that the prosecution presented false testimony at his trial. He points to alleged inconsistencies between the testimony of the victim and her daughter, and differences between their testimony and his own. (Pet. at 21-23)

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a petitioner must establish that: 1) the testimony was actually false; 2) the prosecution knew it was false; and 3) that it was material. *Napue v. Illinois*, 360 U.S. at 271. Knowledge of falsity is attributed to the prosecutor as the spokesperson for the government. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *Napue*, 360 U.S. at 271.

Petitioner has failed to establish either that the testimony by State's witnesses at trial was false, or that the prosecution knew it was false. The fact that one witness' testimony differed from that of another or from Petitioner's version of events is not evidence that the prosecution sponsored false testimony. Conflicting testimony is to be resolved by the jury. *See Koch v. Puckett*, 907 F.2d 524, 531 (1990). Furthermore, Petitioner presents no evidence that the prosecution knew that any

12

of the allegedly conflicting statements was false. In denying this claim, the state habeas court found that Petitioner complained of minor inconsistencies between the two main witnesses for the State, and that these inconsistencies were not evidence of perjury. (S.H.Tr.:92-93). This is not contrary to federal law, and this ground is without merit.

## VII. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his second ground for relief, Petitioner claims that his trial counsel was ineffective by failing to: 1) properly investigate the case and understand the facts in order to present a self-defense case ; 2) object to extraneous offense testimony; 3) hire an expert witness to study the medical evidence; and 4) preserve numerous errors for appellate review. (Pet. at 14-15, Reply at 2-6).

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influ-

13

enced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

### A.     Failure to Investigate and Properly Present Case

Petitioner asserts that his attorney was ineffective for failing to investigate his case and properly present a self-defense case. Counsel cross-examined state's witnesses at length and called Petitioner and his mother in support of his self-defense claim. (R. 1:37-54, 66-77, 82-85, 101-14, 132-34). Petitioner has not shown what further investigation should have been done, or what it would have accomplished. *See Harrington v. Richter*, 131 S.Ct. 770, 789–90 (2011) ("An attorney need not pursue an investigation that would be fruitless."). In denying this claim at the state habeas level, the court found that counsel exhibited a "sufficient command" of the facts of Petitioner's case, and that Petitioner had not shown what further investigation would have accomplished. (S.H.Tr.:85-86). This conclusion is not contrary to federal law.

### B.     Failure to Object

Petitioner next claims that counsel was ineffective for failing to object that State's witness testified during the guilt phase with regard to an extraneous offense. However, the record reflects that the witness actually testified out of order as to punishment only, that the parties agreed to this,

14

and that defense counsel reiterated this fact to the trial court. (R. 1:84-5, 96). Because Petitioner was tried before the court rather than a jury, and the trial court was aware that the testimony related to punishment alone, Petitioner has failed to demonstrate that counsel's agreement to have one witness testify out of order prejudiced him. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (holding that the failure to make meritless objections or motions does not constitute deficient performance).

At the state habeas level, the same trial judge who presided over Petitioner's trial found that the witness' testimony was presented out of order, that this was done with the consent of the parties, that trial counsel clarified on the record that the testimony was to be considered only in the event of a guilty verdict, and that the testimony was admissible at punishment. (S.H.Tr.:87-8). The court then concluded that counsel was not ineffective in this respect. (*Id*. at 88). This conclusion is not contrary to federal law.

**C.**     **Hire Expert**

Petitioner asserts that trial counsel was ineffective for failing to hire an expert to investigate and testify in opposition to the State's medical expert. His claim that such testimony was available and would have benefitted his defense is conclusory. Conclusory allegations are insufficient to raise a constitutional issue in a federal habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir.1983). Furthermore, complaints of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the

15

testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F3d at 538; *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Petitioner has failed to meet this burden.

In denying this claim at the state habeas level, the trial court found that counsel "very ably" cross-examined the medical expert who testified that the human hand can be a deadly weapon, and because of this cross-examination, the expert conceded that he was uncertain what amount of pressure was necessary to compress the jugular vein or the carotid artery. (S.H.Tr.:86-7). The trial court's denial of this claim is not contrary to federal law.

**D.     Preserve Error**

Finally, Petitioner asserts that trial counsel was ineffective for failing to preserve error for appellate review in numerous instances. As noted, conclusory allegations are insufficient to raise a constitutional issue. Petitioner has failed to demonstrate a reasonable probability that had some unspecified ground been preserved for appellate review, there was a reasonable probability that the outcome of his appeal would have been different. The state habeas court's denial of this claim is not contrary to federal law. Petitioner's second ground for relief is without merit and should be denied.

## VIII.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his third ground for relief, Petitioner asserts that appellate counsel erred in failing to raise on direct appeal the grounds for relief he raises in his federal petition.

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Petitioner must show a reasonable probability that but for his

16

counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Petitioner asserts that appellate counsel was ineffective for failing to raise on direct appeal the claims he raises here. First, appellate counsel did raise the enhancement paragraph and sufficiency of the evidence claims, and the state appellate court determined them to be without merit. Second, the remaining claims were raised at the state habeas level and here at the federal level and were determined to be without merit. Therefore, this ground for relief is without merit and should be denied. *See United States v. Phillips*, 210 F.3d at 348 (holding that attorneys do not render deficient representation by failing to present meritless claims on appeal).

### IX. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

17

## X. RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SIGNED on this 9th day of December, 2013.**

*[signature: Irma Carrillo Ramirez]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature: Irma Carrillo Ramirez]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE